**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jarett Settlemeyer, et al., <br> Plaintiffs, <br> v. <br> Meghann Ditsch, Jody Rubin, and Diana Ouillette, <br> Defendants. | No. CV-20-00221-TUC-CKJ <br><br> **ORDER** |

Pending before the Court is Defendants' Motion to Dismiss First Amended Complaint (Doc. 11) and Plaintiffs' Motion for Leave to File Supplemental Memorandum in Opposition to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 21). For the reasons that follow, Defendants' Motion to Dismiss is GRANTED IN PART AND DENIED IN PART, and Plaintiffs' Motion for Leave to File Supplemental Memorandum is DENIED.

## BACKGROUND[1]

Plaintiffs Jarett and Eldon "Kitt" Settlemeyer are the parents of minors JS, CS, and SS. (Doc. 10 at 2) In April and May of 2018, two hotline reports were made to the Arizona Department of Child Safety ("Department"), alleging possible abuse or neglect of the Settlemeyer children. *Id.* at 3-4. Defendant Meghann Ditsch ("Ditsch"), an investigator

---
[1] In analyzing a motion to dismiss, the Court accepts as true all well-pleaded allegations of material fact and construes them in the light most favorable to the non-moving party. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

with the Department, was assigned to investigate both reports. *Id.* at 3. On at least two occasions, Ditsch interviewed the children at their respective schools. *Id.* at 3-4.

After investigating the April hotline report, which included interviewing the Settlemeyers, Ditsch told the Settlemeyers that the Department would be issuing a letter finding the report to be unsubstantiated. *Id*. at 4. During the investigation of the May hotline report, however, CS told a Marana police officer that his mother beat him "regularly" with a "black leather belt and a paddle." *Id.* at 5. Ditsch informed the Settlemeyers that CS had also expressed fear of his mother. *Id.* at 6. Ditsch said the allegation of fearfulness led to the Department's decision that Kitt should not be alone with any of the children until a Team Decision Meeting ("TDM") was held. *Id.* A TDM consisted of a discussion between Department representatives and the parents. On May 16, 2018, a TDM with the Settlemeyers was held. *Id.* at 7.

Defendant Ditsch, her supervisor Defendant Jody Rubin ("Rubin"), and the TDM facilitator Defendant Diana Ouillette ("Ouillette) attended the TDM. *Id.* at 7-8. During the meeting, Ouillette stated, "it sounds like there's a lot of minimization, a lot of not working, a lot of shaming and blaming towards the Department." *Id.* at 9. Both Ouillette and Ditsch also accused the Settlemeyers of a lack of cooperation, with Ditsch adding, "[t]he way that you guys are reacting to us, especially you Kitt, is not helping the situation. Because it's more likely for us to believe that things are happening in the home when you behave that way[.]" *Id.* at 10. Rubin suggested that the Settlemeyers refrain from using physical discipline on their children due to two open reports of abuse and neglect and because at least one of the children had special needs. *Id*. Ditsch also stated:

> What I am going to decide to do, because it will also give you guys an opportunity to contest this, because that's clearly what you want to do, I am wanting to file what's called an in-home dependency petition with the Yuma [sic] County Juvenile Court, which will state that the children will remain in your physical custody. However, DCS, the state of Arizona, will have legal custody[.]

*Id*. When the Settlemeyers attempted to understand what Ditsch was saying, Ouillette cut them off, stating, "You've heard the decision. We need to talk about moving forward then."

*Id*. at 11.

Six days after the TDM, the Arizona Attorney General filed an in-home dependency petition in juvenile court. *Id.* at 11-12. The petition indicated that the Settlemeyers abused and neglected their children. *Id*. Plaintiffs allege that in the absence of material misrepresentations and omissions in the Department's report to the Attorney General, there would have been no probable cause to find that Plaintiffs had abused or neglected their children. *Id*. at 12. Between May 22, 2018, when the dependency petition was filed, and June 1, 2018, Defendants formalized their findings against the Settlemeyers in a report to be submitted to the juvenile court. *Id*. at 11.

The Settlemeyers contend that the Department's report included the following misrepresentations: (i) Plaintiffs' discipline was "harsh," which neither parent was able to recognize; (ii) Jarett's ability to recognize threats to his children was "diminished" because Jarett failed to recognize CS' fear of his mother; (iii) Kitt's tolerance as a caregiver was "diminished" because the children reported that Kitt could become "out of control and angry"; (iv) Marana police officers stated concerns to Ditsch, which included the concern that "Mrs. Settlemeyer's hostilness [sic] to them left concerned [sic] about how she reacts to her children"; (v) the officers also had concerns for Jarett's truthfulness; (vi) the Settlemeyers did not show for the TDM; (vii) one of the children's school had reported that the Settlemeyers were "hard to reach" and "difficult to get ahold of"; (viii) during the TDM, "Mrs. Settlemeyer stated she would participate [in DCS-facilitated] services but only because she was forced to"; (ix) both of the Settlemeyers stated their unwillingness to work with the Department's in-home team; (x) there was a documented history/pattern of physical abuse by Kitt; (xi) and that "[d]ue to the previous child abuse history by Mrs. Settlemeyer, the current fearfulness of the child, the pattern of inappropriate discipline, the parents' aggressive stance towards [the Department] and police; and their unwillingness to work cooperatively with [the Department], the Department fe[lt] court oversight [was] needed[.]" *Id*. at 14-15.

On June 4, 2018, at a preliminary protective hearing, the Arizona Attorney General

submitted the Department's report to the juvenile court. *Id.* at 12; Doc. 11-2 at 17. On January 14, 2019, after six days of a contested dependency hearing spanning over two months, the juvenile court granted the Settlemeyer's motion for a directed verdict, dismissed the dependency, and entered judgment in the Settlemeyer's favor. Doc. 11-2 at 20-40.

**PROCEDURAL HISTORY**

On September 10, 2020, Plaintiffs filed their First Amended Complaint ("FAC"). (Doc. 10) On September 24, 2020, Defendants responded with a Motion to Dismiss Plaintiff's First Amended Complaint. (Doc. 11) On October 20, 2020, Plaintiffs filed a Memorandum in Opposition to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint. (Doc. 17) On October 30, 2020, Defendants filed a Reply in Support of Motion to Dismiss Plaintiffs' First Amended Complaint. (Doc. 20) On January 21, 2021, Plaintiffs filed a Motion for Leave to File Supplemental Memorandum in Opposition to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint. (Doc. 21) On February 4, 2021, Defendants filed a Response to Plaintiffs' Motion for Leave to File Supplemental Memorandum in Opposition to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint. (Doc. 23) This Order follows.

**LEGAL STANDARD**

Dismissal of a complaint is appropriate when the facts alleged fail to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This is true if there is a (1) "lack of a cognizable legal theory" or (2) "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). The Supreme Court has ruled that a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level." *Id.* at 555; *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff,

both of which are plausible, plaintiff's complaint survives a motion to dismiss[.]"). If a court dismisses a complaint it should grant leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## I.     Exhibits Attached to Motion to Dismiss

As a preliminary matter, the Court notes Defendants have attached ten exhibits to their motion to dismiss, *see* Doc. 11-2 at 1-45, and that Plaintiffs have included Defendants' report with their FAC, *see* Doc. 10-1 at 1-34. This raises the question of which documents should be considered by the Court in resolving the motion at hand.

Plaintiffs object to the exhibits attached to Defendants' motion arguing that the exhibits contain hearsay and that a court may not take judicial notice of findings of facts from another case or take judicial notice of factual matters that are in dispute. (Doc. 17 at 4-5)  Plaintiffs suggest that the Court convert Defendants' motion into one for summary judgment if the Court considers the exhibits for the facts which they contain. *Id*. at 5. Defendants respond by arguing that it is permissible to attach court documents and records to a motion to dismiss and that such inclusion does not automatically convert the motion into one for summary judgment. (Doc. 19 at 1-2)  Defendants also assert that the facts outlined in the exhibits demonstrate that Plaintiffs cannot prevail on their judicial deception claim, as said claim can only survive if a court order results in a deprivation of a liberty interest. *Id*. at 3.

In deciding a Rule 12(b)(6) motion, the court generally looks only to the face of the complaint. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). A court must normally convert a Rule 12(b)(6) motion into a motion for summary judgment if it "considers evidence outside the pleadings[.]" *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id*. at 908. Incorporation by reference refers to "documents whose contents are

alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading[.]" *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). To incorporate such a document, the plaintiff must "refer extensively to the document" or "the document [must] form[ ] the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908. "[T]he mere mention of the existence of a document is insufficient to incorporate the contents of [that] document." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

While the Court may consider documents outside of the complaint, the United States Court of Appeals for the Ninth Circuit has cautioned that recognizing such material risks premature dismissal of plausible claims. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). The court has also warned that "[i]f defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief." *Id.* at 999. This Court has previously considered documents and videos referenced and incorporated into a first amended complaint in ruling on a 12(b)(6) motion to dismiss; however, the fact scenario presented in *Spears v. Arizona Board of Regents*, 372 F. Supp. 3d 893, 908 (D. Ariz. 2019), is inapposite to the one at hand.

Where appropriate, and for the purpose of understanding the procedural history of the juvenile court proceeding, the Court takes judicial notice of the court documents and records attached to Defendants' motion to dismiss. Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record", but it may not take judicial notice of a fact that is "subject to reasonable dispute." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). Additionally, "when a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity. *Id.* at 690 (internal quotation marks omitted).

The Court also takes judicial notice of the minute entries attached to Defendants' motion to dismiss. *See* Doc. 11-2 at 16-37. The entries are only considered in confirming the undisputed existence of the juvenile court proceeding. At this stage of the litigation, any further consideration of the entries would be improper, and the Court declines to accept Defendants' invitation to draw any adverse inferences from the entries.

As for the in-home dependency petition, *see* Doc. 11-2 at 2-15, the petition is not a matter of public record and Defendants fail to provide sufficient reference in the FAC for the Court to consider the contents of the petition. While the petition's existence is mentioned numerous times in the FAC, its contents are only alluded to in two brief paragraphs. *See* Doc. 10, ¶¶ 49, 50 at 11-12. Additionally, mention of the petition is limited to outlining its overall gist and to support the allegation that the Assistant Attorney General assigned to the juvenile case relied upon Defendants' misinformation in drafting it. This hardly constitutes "extensive" reference to the document, and the petition itself is not the foundation for Plaintiffs' claims. Rather, it is Defendants' alleged material misrepresentations and omissions in their report to the juvenile court which forms the crux of Plaintiffs' FAC. As such, Defendants' motion to dismiss is evaluated on the adequacy of Plaintiffs' allegations and not on an inappropriate balancing of disputed facts found in documents attached to their motion.

## II. Statute of Limitations

The Court rejects Defendants' argument that Plaintiffs' First Amendment retaliation claim is barred by the statute of limitations. *See* Doc. 11 at 6-7. "Actions brought pursuant to 42 U.S.C. § 1983 are governed by the forum state's statute of limitations for personal injury actions." *Knox v. Davis*, 260 F.3d 1009, 1012 (9th Cir. 2001). Arizona's personal injury statute of limitations is two years "after the cause of action accrues." Ariz. Rev. Stat. Ann. § 12-542 (2021). "While state law determines the period of limitations, federal law determines *when* a cause of action accrues." *Cline v. Brusett*, 661 F.2d 108, 110 (9th Cir. 1981) (emphasis added). The statute of limitations begins to run when the plaintiff "knows or has reason to know of the injury which is the basis for his action." *Elliot v. City*

*of Union City*, 25 F.3d 800, 802 (9th Cir. 1994) (quoting *Norco Constr., Inc. v. King Cnty.*, 801 F.2d 1143, 1145 (9th Cir. 1986)).  Dismissal is only appropriate if a plaintiff cannot plausibly allege a set of facts demonstrating the timeliness of the claim.  *See Twombly*, 550 U.S. at 570.  "The defendant . . . bears the burden of proof as to each element of a statute of limitations based affirmative defense."  *Ayala v. Frito Lay, Inc*. 263 F. Supp. 3d 891, 914 (E.D. Cal. 2017) (citing *Tovar v. U.S.P.S.*, 3 F.3d 1271, 1284 (9th Cir. 1993)).

The Court finds Plaintiffs have plausibly alleged facts demonstrating the timeliness of their claim.  On May 22, 2020, Plaintiffs filed their original complaint.  (Doc. 1)  May 22, 2020, is two years from the filing of the dependency petition, which was allegedly supported by material misrepresentations and omissions.  *See* Doc. 11-2 at 2-15.  Defendants allegedly prepared their report to the juvenile court between May 22, 2018, and June 1, 2018, and the Attorney General admitted the report at a preliminary protective hearing in juvenile court on June 4, 2018, *see* Doc. 11-2 at 17.

Taking the allegations of material fact in the FAC as true and construing them in the light most favorable to Plaintiffs, it is plausible to conclude that Plaintiffs were not aware that they could lose legal custody of their children until they received Defendants' report to the juvenile court on or after June 1, 2018.  Afterall, it allegedly took six days for Defendants to draft their dependency report, and Plaintiffs presumably failed to have access to the report, which included the Department's custody recommendations, until it was admitted into evidence at the preliminary protective hearing on June 4, 2018.  Accordingly, Plaintiffs' First Amendment retaliation claim plausibly falls within the two-year statute of limitations and dismissal is inappropriate on this ground.

### III.     First Amendment Retaliation

The Court also finds that Plaintiffs successfully plead a First Amendment retaliation claim.  To state a First Amendment retaliation claim, a plaintiff must allege (1) engagement in a constitutionally protected activity, (2) the defendant's actions would "chill" such activity, and (3) the activity was a substantial or motivating factor in the defendant's actions.  *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019).  Criticism of a

government entity is constitutionally protected, *id.* at 1054, and courts utilize an objective standard for the "chilling" factor of the pleading standard, determining whether the defendant's actions would chill an ordinary individual from continuing the activity. *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 771 (9th Cir. 2006).

In *Capp v. County of San Diego*, the Ninth Circuit observed that losing custody of one's children is "a severe consequence that would chill the average person" from continuing the activity. 940 F.3d 1046, 1055 (9th Cir. 2019). There, the court found the "chilling" factor was plausibly alleged, as the *threat* of losing custody of one's children, alone, was sufficient to chill the average person from voicing criticism of official conduct. *Id.* at 1055. As to the causation prong, the court observed that "speculation is hardly unusual in retaliation cases," and that the mere existence of a legitimate motive failed to mandate dismissal. *Id.* at 1055-56. The Ninth Circuit has also concluded that a sufficient first amendment retaliation claim can stem from a "chronology of events from which retaliation can be inferred," such as when a defendant allegedly mentions the constitutionally protected activity near in time to the retaliatory action(s). *Watson v. Carter*, 668 F.3d 1108, 1114, 1116 (9th Cir. 2012)

Plaintiffs have sufficiently alleged the first two prongs of their claim. There is no question that the Settlemeyer's well-documented and extensive criticism of the Department is constitutionally protected and that Defendants' threats of taking custody of their children has been recognized as chilling. Additionally, the Court finds that Plaintiffs have sufficiently alleged the causation prong of their retaliation claim, as they contend Defendants' statements were designed to inhibit their speech and came in close proximity to the alleged retaliatory action of supporting an in-home dependency petition and filing a false report with the juvenile court.

**IV. Dismissal of Defendant Ouillette**

In their Motion to Dismiss, Defendants request that Ouillette be dismissed. The Court declines to do so. Plaintiffs allege Defendant Ouillette offered negative comments in response to the their constitutionally protected criticism of the Department. (Doc. 10 at

9) Plaintiffs also allege that Ouillette prepared the TDM summary, which included material misrepresentations and omissions and was used as the basis of the dependency petition. Thus, Ouillette participated in the same occurrence that gave rise to the claims against Ditsch and Rubin, and her role in the Department's alleged retaliation involves a common question of law and fact with the remaining Defendants.

## V.     Judicial Deception

To adequately plead a judicial deception claim, a plaintiff must allege "(1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Keates v. Koile*, 883 F.3d 1228, 1240 (9th Cir. 2018). The second prong of the standard is a question of materiality, requiring the plaintiff to show "the juvenile court would have declined to issue the order had [the defendant] been truthful." *Greene v. Camreta*, 588 F.3d at 1011, 1035 (9th Cir. 2009), *vacated in part on other grounds*, 563 U.S. 692 (2011). It is well understood that the Due Process Clause of the Fourteenth Amendment protects a liberty interest that includes the right to family integrity, familial association, and directing the upbringing of children. *See Troxel v. Granville*, 530 U.S. 57, 65 (2000) ("[T]he interest of parents in the care, custody, and control of their children [ ] is perhaps the oldest of the fundamental liberty interests recognized by this Court"). Deliberately falsifying evidence in a child abuse investigation or including false evidentiary statements in supporting a declaration violates this constitutional right. *Constanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1115 (9th Cir. 2010).

The Court notes, however, that similar judicial deception claims typically stem from an order for removal, which often involves a Fourth Amendment claim. *See, e.g.*, *Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784 (9th Cir. 2015); *Greene*, 588 F.3d at 1016. Caselaw does not support, and Plaintiffs fails to cite, a survivable claim for judicial deception resulting in unwarranted interference with familial association without a removal order. Here, Plaintiffs prevailed in juvenile court and never lost physical or legal custody of their children. As such, the Court must adhere to precedent requiring a plaintiff to

"establish that an actual loss of custody occurred," and that "the mere threat of separation or being subject to an investigation" fails to meet this standard. *Dees v. Cnty. of San Diego*, 960 F.3d 1145, 1152 (9th Cir. 2020); *see also Capp*, 940 F.3d at 1060 ("Plaintiffs do not allege that [plaintiff] actually lost custody of his children as a result of [d]efendants' alleged misconduct. [Plaintiff] might have been subjected to an investigation by the [defendant], but that alone is not cognizable as a violation of the liberty interest in familial relations.")

Plaintiffs fail to allege any actual loss of custody of their children. Since Plaintiffs' judicial deception claim is based on allegedly false information submitted to the Attorney General and juvenile court, any previous actions taken, e.g., the requirement that Kitt not be left alone with the children, fail to fall within the scope of this claim. Accordingly, Plaintiffs fail to raise a legally cognizable deprivation of liberty claim under the Fourteenth Amendment, and the claim is dismissed.

While leave to amend is to be "freely given when justice so requires", Fed. R. Civ. P. 15(a), in evaluating whether to allow leave, the Court must consider any "futility of the proposed amendment," *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). And "futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Plaintiffs' FAC demonstrates that they failed to suffer a cognizable injury. Even taking the facts in the light most favorable to them, Plaintiffs' concession that the juvenile court found in their favor makes amendment futile. *See* Doc. 10 at 12. Accordingly, Plaintiffs' judicial deception claim is dismissed with prejudice.

### VI. Additional Claims in Plaintiffs' Response

Plaintiffs mention a potential claim for malicious prosecution for the first time in their opposition to Defendants' motion to dismiss. *See* Doc. 17 at 16. The Court will not examine that claim because it is not contained in Plaintiffs' FAC. Plaintiffs are required to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 (2007) (cleaned up). Further, "a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in

opposition to a defendant's motion to dismiss." *Schneider v. California Dept. of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). Plaintiffs were explicit in laying out their First Amendment retaliation and judicial deception claims, placing each under a headline and asserting grounds for relief in their FAC. *See generally*, Doc. 10. The same cannot be said for a hypothetical claim of malicious prosecution.

### VII. Absolute Immunity

Defendants are not entitled to absolute immunity for Plaintiffs' First Amendment retaliation claim. At this stage, while social workers enjoy absolute immunity when making "discretionary, quasi-prosecutorial decisions to institute court dependency proceedings to take custody away from parents[,]" *Miller v. Gammie*, 335 F.3d 889, 898 (9th Cir. 2003), they do not have absolute immunity for all actions "before the institution of judicial proceedings[,]" *Meyers v. Contra Costa Cty. Dep't of Soc. Servs.*, 812 F.2d 1154, 1156 (9th Cir. 1987).

Absolute immunity extends only to actions aiding in the preparation of the case to the juvenile court or for those subject "to the checks operating on judicial decisionmakers." *Id.* at 1157-1158. In *Meyers v. Contra Costa County Dep't of Social Services*, the Ninth Circuit found that the social worker's ordering of Plaintiff from his house fell outside the scope of absolute immunity, as it was neither "advocatory or quasi-judicial." 812 F.2d 1154, 1157 (9th Cir. 1987). Additionally, social workers are not absolutely immune from claims of fabricated evidence or false statements because they "aren't similar to discretionary decisions about whether to prosecute." *Hardwick v. Cty. of Orange*, 844 F.3d 1112, 1116 (9th Cir. 2017).

Plaintiffs allege Defendants directed Kitt not be alone with any of her children. This was done not only before initiating proceedings but before holding the TDM. The similarity between this action and the ordering of the *Meyers* plaintiff from his home is noted. Accordingly, Defendants are not shielded by the doctrine of absolutely immunity from Plaintiffs' First Amendment retaliation claim.

### VIII.   Qualified Immunity

The Court concludes that Defendants are not shielded by the doctrine of qualified immunity at this stage.  Qualified immunity applies only when "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Capp*, 940 F.3d at 1053.  There is a "longstanding, clearly established right under the First Amendment to be free from retaliation in the form of threatened legal sanctions and other similar means of coercion, persuasion, and intimidation" that includes the threat of losing custody of one's children.  *Sampson v. Cnty. of Los Angeles*, 974 F.3d 1012, 1021 (9th Cir. 2020) (collecting cases).

Plaintiffs have sufficiently pleaded a First Amendment Retaliation claim, and the constitutional right which was violated—threatening the loss of child custody—has been clearly established.  Accordingly, Defendants are not entitled to qualified immunity on Plaintiffs' First Amendment Retaliation claim.

### IX.   Motion for Leave to File Supplemental Memorandum

Because the Court finds Defendants are not shielded by the doctrine of qualified immunity at this stage of the litigation, it declines to fully explore the arguments against qualified immunity in Plaintiff's motion to file a supplemental memorandum, and the motion is denied.

### X.   Punitive Damages

Punitive damages against individual government officials are allowed and can often be the "only significant remedy" for § 1983 claims with limited compensable injury. *Carlson v. Green*, 446 U.S. 14, 22, n.9 (1980).  In order to sufficiently plead punitive damages, a plaintiff must allege a defendant's conduct was "motivated by evil motive or intent" or "involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).  Plaintiffs' allegations meet this standard and the Court will allow the request for punitive damages to stand.

**IT IS ORDERED:**

1. Defendants' Motion to Dismiss First Amended Complaint (Doc. 11) is GRANTED IN PART AND DENIED IN PART. Plaintiffs' First Amendment retaliation claim may proceed. Plaintiffs' judicial deception claim is DISMISSED WITH PREJUDICE.

2. Plaintiffs' Motion for Leave to File Supplemental Memorandum in Opposition to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 21) is DENIED.

Dated this 4th day of May, 2021.

*[signature]*
Honorable Cindy K. Jorgenson
United States District Judge